## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

---

AMERICAN STEAMSHIP
COMPANY, A New York
Corporation,

   Plaintiff,

    v.

HALLETT DOCK COMPANY, A
Minnesota Corporation; FRASER
SHIPYARDS, INC., A Wisconsin
Corporation,

   Defendants.

Case No. _09·2628 MJD/QLE_

**COMPLAINT AND
JURY TRIAL DEMAND**

---

   Plaintiff, AMERICAN STEAMSHIP COMPANY ("AMERICAN STEAMSHIP"), for its Complaint and Jury Trial Demand against HALLETT DOCK COMPANY ("HALLETT") and FRASER SHIPYARDS, INC. ("FRASER") alleges as follows:

### JURISDICTION AND VENUE

   1. The Court has jurisdiction over the subject matter of this civil action because this is an admiralty and maritime claim pursuant to 28 U.S.C. § 1333 and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court also has jurisdiction over the subject matter pursuant to Section 1332 of Title 28 of United States Code, because complete diversity of citizenship exists among

SCANNED

SEP 2 ⸱ 2009

U.S. DISTRICT COURT MPLS

Plaintiff AMERICAN STEAMSHIP, a New York Corporation, and Defendants HALLETT, a Minnesota Corporation doing business in Duluth, Minnesota and Superior, Wisconsin, and FRASER, a Wisconsin Corporation, doing business in Duluth, Minnesota and Superior, Wisconsin, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.     Venue is proper in the United States District Court for the District of Minnesota because some or all of the representations and promises made and/or events giving rise to the action occurred in Duluth, Minnesota, which is located in the Duluth-Superior Harbor and St. Louis County and within the boundaries of the District of Minnesota, and all defendants can be found within the District conducting regular, continuous, and systematic business in Duluth, Minnesota and the Duluth-Superior Harbor. In addition, all defendants have continuously, systematically and purposely availed themselves of the privilege of conducting business activities with the State of Minnesota.

## ALLEGATIONS REGARDING THE PARTIES

3.     AMERICAN STEAMSHIP is a corporation organized and existing under the laws of the State of New York and was at all relevant times the owner and charterer of the M/V WALTER J. MCCARTHY JR. ("the MCCARTHY"), which is a one thousand foot long bulk carrier of approximately 35,923 gross tons owned by AMERICAN STEAMSHIP, enrolled and licensed for the coasting trade,

and employed in the business of international and national commerce and navigation between places in different countries and states upon the Great Lakes and navigable waters connecting the Great Lakes.

4.     Upon information and belief, HALLETT is a corporation organized and existing under the laws of the State of Minnesota, that has at all relevant times been engaged in the continuous and systemic business of providing dock space and receiving, storing, and shipping bulk commodities from its home in Duluth, Minnesota and docks in both Duluth, Minnesota and Superior, Wisconsin in the Duluth-Superior Harbor at the western end of Lake Superior in Duluth, Minnesota. As one of the largest independent companies in the business of transferring bulk commodities in the port of Duluth-Superior, HALLETT brings in and ships out products by several means, including by shipping vessel, and also often stores commodities on its outdoor docks, including Hallett Dock No. 8. As owner and an operator of several docks, including Hallett Dock No. 8, HALLETT is required to exercise reasonable care in discharging its duties as a wharfinger including, but not limited to, safe guiding, spotting, and tying-up of ships into place, and in discharging its other associated duties.

5.     Upon information and belief, FRASER is a corporation organized and existing under the laws of the State of Wisconsin, that has at all relevant times been engaged in the continuous and systematic business of providing a broad range

-3-

of services and capabilities to Great Lakes ships and freighters at docks in both Duluth, Minnesota and Superior, Wisconsin in the Duluth-Superior Harbor, including winter lay-up and general maintenance, new construction, underwater and topside repairs, boiler repair and reconstruction, hull work, propulsion system repairs, insurance inspections, Coast Guard certifications, marine surveys, automation, and general fit out. As a business regularly conducting operations in and around the docks in Duluth and Superior, in the Duluth-Superior Harbor, and at Hallett Dock No. 8, FRASER is required to exercise reasonable care in discharging its duties as a wharfinger including, but not limited to, safe guiding, spotting, and tying-up of ships into place, and in discharging its other associated duties.

## FED. R. CIV. P. 38(b) JURY DEMAND

6.      Pursuant to the "savings to suitors" clause of 28 U.S.C. § 1333(1) and the Court's diversity jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1332, AMERICAN STEAMSHIP hereby demands a jury trial of all claims and counts raised herein.

7.      In the alternative, pursuant to 28 U.S.C. § 1873 and the Court's admiralty and maritime jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1333 and within the meaning of Rule 9(h) of the Federal Rules

of Civil Procedure, AMERICAN STEAMSHIP hereby demands a jury trial of all claims and counts raised herein.

## FACTUAL ALLEGATIONS

8.    AMERICAN STEAMSHIP realleges and incorporates by reference the allegations in paragraphs 1-7, above.

9.    On or about the late fall of 2007 and early winter of 2007-2008, AMERICAN STEAMSHIP negotiated contracts with HALLETT and FRASER regarding the MCCARTHY's winter lay-up location and general maintenance to be provided by HALLETT and FRASER.  Based upon a negotiated exchange of good and valuable consideration and/or promises, the parties agreed that the MCCARTHY would dock at Hallett Dock No. 8 for its winter lay-up and general maintenance and that, among other things, HALLETT and FRASER would both be present at and provide safe wharfinger and berthing services, including safe guiding, spotting, and tying-up of the MCCARTHY into the slip at Hallett Dock No. 8.

10.    Hallett Dock No. 8 is located on the south shore of the Duluth-Superior Harbor, which is located on Lake Superior in Superior, Wisconsin.  Lake Superior and the area proximate to Hallett Dock No. 8 are part of the navigable waters of the United States.

11. On or about the late fall of 2007 and early winter of 2007-2008, HALLETT and FRASER entered in contracts with AMERICAN STEAMSHIP and HALLETT and FRASER made several express promises, warranties and representations to AMERICAN STEAMSHIP including, but not limited to:

(a) the MCCARTHY could safely dock at Hallett Dock No. 8 for proper winter lay-up and general maintenance;

(b) the berths and the slip within Hallett Dock No. 8 were in good and operable condition without hazards or dangerous obstructions and that the MCCARTHY was able to safely enter and remain at Dock No. 8 for proper winter lay-up and general maintenance;

(c) any dangerous conditions that existed were properly removed and/or marked and that HALLETT and FRASER would safely guide, spot, and tie-up the MCCARTHY;

(d) the electrical power supply at Hallett Dock No. 8 would be properly upgraded, increased, placed, and/or provided for the MCCARTHY's winter lay-up and general maintenance;

(e) the snow on Hallett Dock No. 8 would be removed or moved and that a steel gangway or staircase would be properly provided and placed to allow for safe and easy exit out of and entrance into the MCCARTHY;

(f) the MCCARTHY should navigate as far into and close to the south end (shore line) of the slip at Hallett Dock No. 8 as possible;

(g) HALLETT and FRASER employees/representatives would mark the MCCARTHY's tie-up spot;

(h) certain and specific knowledgeable HALLETT and FRASER employees/representatives would be present at Hallett Dock No. 8 to oversee guiding, spotting, tie-up and/or other operations when the MCCARTHY arrived; and

(i)   HALLETT and FRASER would provide safe wharfinger and berthing services including, but not limited to, safe guiding, spotting, and tying-up of the MCCARTHY into place, when it arrived.

12.   On or about January 14, 2008, a large obstruction of concrete debris was hidden underwater and located in the slip at Hallett Dock No. 8.  HALLETT and FRASER failed to properly advise AMERICAN STEAMSHIP of this obstruction and instead directed the AMERICAN STEAMSHIP crew and the MCCARTHY into this hidden obstruction.

13.   On or about January 14, 2008, the MCCARTHY arrived in the Duluth-Superior Harbor and initiated its docking procedures at Hallett Dock No. 8.

14.   When the MCCARTHY began backing and/or navigating into the slip at Hallett Dock No. 8, no hidden obstructions were marked, there was no marked tie-up spot for the MCCARTHY, and the promised certain and specific HALLETT and FRASER employees/representatives were not present to guide the vessel into the slip.   Instead, other, previously unspecified employees/representatives of FRASER and HALLETT, who had arrived at Hallett Dock No. 8 in a FRASER vehicle, improperly guided and spotted the MCCARTHY into the slip at Hallett Dock No. 8.

15.   HALLETT and FRASER directed the MCCARTHY and its crew to navigate as close to the south shore of the slip as possible, assured the MCCARTHY and its crew of its safety, and further informed the MCCARTHY's

crew that, if the MCCARTHY did not navigate as close to the south end (shore line) of the slip as possible, the vessel would have to go to another dock for winter lay-up and general maintenance.

16.     As a result of the negligent and careless acts and omissions by HALLETT and FRASER, HALLETT and FRASER directed the navigation of the MCCARTHY toward the south end (shoreline) of the slip and the MCCARTHY struck the large hidden obstruction of concrete debris that was hidden underwater and located in the slip at Hallett Dock No. 8.

17.     As a result of the foregoing impact, the MCCARTHY sustained property damage and filled with water and sank, thus requiring numerous reasonable and necessary repairs, and AMERICAN STEAMSHIP further sustained property damages and loss of revenue and/or business interruption losses, as well as pollution clean-up and prevention costs and other such additional damages that were caused by HALLETT and FRASER.

18.     Although both HALLETT and FRASER were fully aware of the damage that they caused to the MCCARTHY and the resulting damages incurred by AMERICAN STEAMSHIP, AMERICAN STEAMSHIP provided additional reasonable notice to HALLETT and FRASER of their breach of contract, warranty and/or other failings and notice about the subject incident and damages to the

MCCARTHY and AMERICAN STEAMSHIP, as well as the claims of AMERICAN STEAMSHIP against HALLETT and FRASER.

## COUNT I: NEGLIGENCE AS TO ALL DEFENDANTS

19. AMERICAN STEAMSHIP realleges and incorporates by reference the allegations in paragraphs 1 through 18, above.

20. HALLETT has an affirmative duty to exercise reasonable care as a wharfinger, to maintain Hallett Dock No. 8 and its slip in a condition that is safe for commercial navigation, to conduct soundings of Hallett Dock No. 8 at reasonable intervals to determine its safety for navigation, to remedy any unsafe conditions in and around Hallett Dock No. 8, to warn of dangerous conditions that HALLETT knows of or, in the exercise of reasonable care, should discover in and around Hallett Dock No. 8, and to safely guide, spot, and tie-up vessels into Hallett Dock No. 8.

21. HALLETT failed to exercise reasonable care as a wharfinger in several ways including, but not limited to, its failure to maintain Hallett Dock No. 8 and its slip in a condition that is safe for commercial navigation and for winter lay-up and general maintenance, failure to conduct soundings at reasonable intervals, failure to remedy an unsafe condition in and around Hallett Dock No. 8, failure to give proper notice of a dangerous condition in and around Hallett Dock No. 8 that HALLETT knew of or should have known of in the exercise reasonable

care, and failure to safely guide, spot, and tie-up the MCCARTHY into Hallett Dock No. 8.

22.    As a proximate result of the negligence of HALLETT as alleged above, AMERICAN STEAMSHIP has incurred damages including physical damage to the MCCARTHY, the cost of reasonable and necessary repairs, lost revenues and business interruption losses, pollution clean-up and prevention, and other such additional resulting damages.

23.    FRASER has an affirmative duty to exercise reasonable care as a wharfinger, to conduct its business operations in and around Hallett Dock No. 8 and its slip with reasonable care, to remedy any unsafe conditions in and around Hallett Dock No. 8, to warn of dangerous conditions in and around Hallett Dock No. 8 that FRASER knows of or, in the exercise of reasonable care, should discover, and to safely guide, spot, and tie-up vessels into Hallett Dock No. 8.

24.    FRASER failed to exercise reasonable care as a wharfinger in several ways including, but not limited to, its failure to conduct its business operations in and around Hallett Dock No. 8 with reasonable care, failure to remedy an unsafe condition in and around Hallett Dock No. 8, failure to warn of dangerous conditions in and around Hallett Dock No. 8 that FRASER knew of or, in the exercise of reasonable care, should have discovered, and failure to safely guide, spot, and tie-up the MCCARTHY into Hallett Dock No. 8.

25.     As a proximate result of the negligence of FRASER as alleged above, AMERICAN STEAMSHIP has incurred damages including, physical damage to the MCCARTHY, the cost of reasonable and necessary repairs, lost revenue and business interruption losses, pollution clean-up and prevention costs, and other such additional damages.

## COUNT II:  BREACH OF CONTRACT AS TO ALL DEFENDANTS

26.     AMERICAN STEAMSHIP realleges and incorporates by reference the allegations in paragraphs 1 through 25, above.

27.     On or about the late fall of 2007 and early winter of 2007-2008, AMERICAN STEAMSHIP contracted with HALLETT for HALLETT to provide, among other things as set forth in paragraph No. 11 herein, a safe and appropriate winter lay-up and general maintenance location and safe and proper wharfinger and berthing services to AMERICAN STEAMSHIP including, but not limited to, safe guiding, spotting, and tying-up of the MCCARTHY into the slip at Hallett Dock No. 8, in exchange for promises made and good and valuable consideration paid by AMERICAN STEAMSHIP to HALLETT.  AMERICAN STEAMSHIP fulfilled all of its obligations under the contract.

28.     HALLETT breached its contract with AMERICAN STEAMSHIP in several ways including, but not limited to, by failing to provide a safe winter lay-up and general maintenance berth with safe ingress and egress for the

-11-

MCCARTHY and by failing to safely guide, spot, and tie-up the MCCARTHY into a safe berth at Hallett Dock No. 8. More specifically, HALLETT breached its contract with AMERICAN STEAMSHIP because a large obstruction of concrete debris was hidden underwater and located in the slip at Hallett Dock No. 8 and because HALLETT failed to properly advise AMERICAN STEAMSHIP of this obstruction and instead directed the AMERICAN STEAMSHIP crew and the MCCARTHY into this hidden obstruction. In addition, HALLETT breached its contract with AMERICAN STEAMSHIP because no hidden obstructions were marked, there was no marked tie-up spot for the MCCARTHY, and the promised certain and specific HALLETT and FRASER employees/representatives were not present to guide the vessel into the slip. Instead, other, previously unspecified employees/representatives of FRASER and HALLETT, who arrived at Hallett Dock No. 8 in FRASER vehicle, improperly guided and spotted the MCCARTHY into the slip at Hallett Dock No. 8.

29.    As a direct and proximate result of HALLETT's breach, AMERICAN STEAMSHIP was forced to incur, and has incurred, damages including physical damage to the MCCARTHY, the cost of reasonable and necessary repairs, lost revenue and business interruption losses, pollution clean-up and prevention costs, and other such additional damages.

-12-

30.     On or about the late fall of 2007 and early winter of 2007-2008, AMERICAN STEAMSHIP contracted with FRASER for FRASER to provide, among other things as set forth in paragraph No. 11 herein, a safe winter lay-up and general maintenance location and general maintenance on the MCCARTHY while at Dock No. 8 and to provide safe wharfinger and berthing services including, but not limited to, safe guiding, spotting, and tying-up of the MCCARTHY into the slip at Dock No. 8, in exchange for promises made and good and valuable consideration paid by AMERICAN STEAMSHIP to FRASER. AMERICAN STEAMSHIP fulfilled all of its obligations under the contract.

31.     FRASER breached its contract with AMERICAN STEAMSHIP in several ways including, but not limited to, by failing to provide a safe winter lay-up and general maintenance berth and by failing to safely guide, spot and tie-up the MCCARTHY into a safe berth at Hallett Dock No. 8. More specifically, FRASER breached its contract with AMERICAN STEAMSHIP because a large obstruction of concrete debris was hidden underwater and located in the slip at Hallett Dock No. 8 and because FRASER failed to properly advise AMERICAN STEAMSHIP of this obstruction and instead directed the AMERICAN STEAMSHIP crew and the MCCARTHY into this hidden obstruction. In addition, FRASER breached its contract with AMERICAN STEAMSHIP because no hidden obstructions were marked, there was no marked tie-up spot for the MCCARTHY, and the promised

certain and specific HALLETT and FRASER employees/representatives were not present to guide the vessel into the slip. Instead, other, previously unspecified employees/representatives of FRASER and HALLETT, who arrived at Hallett Dock No. 8 in a FRASER vehicle, improperly guided and spotted the MCCARTHY into the slip at Hallett Dock No. 8.

32.    As a direct and proximate result of FRASER's breach, AMERICAN STEAMSHIP was forced to incur, and has incurred, damages including physical damage to the MCCARTHY, the cost of reasonable and necessary repairs, lost revenue and business interruption losses, pollution clean-up and prevention, and other such additional damages.

## COUNT III:  BREACH OF IMPLIED WARRANTY OF WORKMANLIKE PERFORMANCE AS TO ALL DEFENDANTS

33.    AMERICAN STEAMSHIP realleges and incorporates by reference the allegations in paragraphs 1 through 32, above.

34.    At all times herein alleged, HALLETT impliedly warranted, among other things,  that the berths and the slip within Hallett Dock No. 8 were in good and operable condition without hazards or dangerous obstructions for commercial vessels entering Dock No. 8, that any dangerous condition at Dock No. 8 was properly marked and that HALLETT would safely guide, spot, and tie-up the MCCARTHY.

-14-

35.   AMERICAN STEAMSHIP is informed and believes and thereon alleges that HALLETT breached its implied warranty of workmanlike performance by failing, among other things, to maintain and provide safe access to Hallett Dock No. 8 and its berths and slip, by failing to maintain and keep Dock No. 8 and its slip free from dangerous obstructions, by failing to notify AMERICAN STEAMSHIP of the hidden obstruction that existed within the slip at Hallett Dock No. 8, and by failing to safely guide, spot and tie-up the MCCARTHY.

36.   As a result of HALLETT's failure to maintain Hallett Dock No. 8 and its berths and slip, failure to give proper notice of a dangerous condition and/or failure to properly guide, spot, and tie-up the MCCARTHY, HALLETT breached its implied warranty of workmanlike performance causing damage to the MCCARTHY and to AMERICAN STEAMSHIP all to its detriment and as previously stated.

37.   At all times herein alleged, FRASER warranted that the berths and the slip within Hallett Dock No. 8 were in good and operable condition without hazards or dangerous obstructions for commercial vessels entering Dock No. 8. FRASER further warranted that any dangerous condition at Dock No. 8 was properly marked and that HALLETT would safely guide, spot, and tie-up the MCCARTHY.

38.     AMERICAN STEAMSHIP is informed and believes and thereon alleges that FRASER breached its implied warranty of workmanlike performance by failing, among other things, to maintain and provide safe access to Hallett Dock No. 8 and its berths and slip, by failing to maintain and keep Hallett Dock No. 8 and its slip free from dangerous obstructions and by failing to warn and notify AMERICAN STEAMSHIP of the hidden obstruction that existed within the slip at Hallett Dock No. 8, and by failing to safely guide, spot and tie-up the MCCARTHY.

39.     As a result of FRASER's failure to maintain Hallett Dock No. 8 and its berths and slip, failure to give proper warning or notice of a dangerous condition, and by failing to properly guide, spot, and tie-up the MCCARTHY, FRASER breached its implied warranty of workmanlike performance causing damage to the MCCARTHY and to AMERICAN STEAMSHIP all to its detriment and as previously stated.

## COUNT IV:  BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AS TO ALL DEFENDANTS

40.     AMERICAN STEAMSHIP realleges and incorporates by reference the allegations in paragraphs 1 through 39, above.

41.     At all times herein alleged, HALLETT impliedly warranted, among other things,  that the berths and the slip within Hallett Dock No. 8 were in good and operable condition without hazards or dangerous obstructions for commercial

vessels entering Dock No. 8, that any dangerous condition at Dock No. 8, was properly marked and that HALLETT would safely guide, spot, and tie-up the MCCARTHY.

42.    AMERICAN STEAMSHIP is informed and believes and thereon alleges that HALLETT breached its implied warranty of fitness for a particular purpose by failing, among other things, to maintain and provide safe berths and a safe slip within Hallett Dock No. 8, by failing to provide safe access to Hallett Dock No. 8 and its berths and slip, by failing to maintain and keep Dock No. 8 and its slip free from dangerous obstructions, by failing to notify AMERICAN STEAMSHIP of the hidden obstruction that existed within the slip at Hallett Dock No. 8, and by failing to safely guide, spot and tie-up the MCCARTHY.

43.    As a result of HALLETT's failure to maintain and provide a safe slip and dock at Hallett Dock No. 8, failure to maintain Hallett Dock No. 8 and its berths and slip, failure to give proper notice of a dangerous condition and/or failure to properly guide, spot, and tie-up the MCCARTHY, HALLETT breached its implied warranty of fitness for a particular purpose causing damage to the MCCARTHY and to AMERICAN STEAMSHIP all to its detriment and as previously stated.

44.    At all times herein alleged, FRASER warranted that the berths and the slip within Hallett Dock No. 8 were in good and operable condition without

-17-

hazards or dangerous obstructions for commercial vessels entering Dock No. 8. FRASER further warranted that any dangerous condition at Dock No. 8 was properly marked and that HALLETT would safely guide, spot, and tie-up the MCCARTHY.

45. AMERICAN STEAMSHIP is informed and believes and thereon alleges that FRASER breached its implied warranty of fitness for a particular purpose by failing, among other things, to maintain and provide a safe slip and dock at Hallett Dock No. 8, by failing to provide safe access to Hallett Dock No. 8 and its berths and slip, by failing to maintain and keep Hallett Dock No. 8 and its slip free from dangerous obstructions and by failing to warn and notify AMERICAN STEAMSHIP of the hidden obstruction that existed within the slip at Hallett Dock No. 8, and by failing to safely guide, spot, and tie-up the MCCARTHY.

46. As a result of FRASER's failure to maintain and provide a safe slip and dock at Hallett Dock No. 8, failure to maintain Hallett Dock No. 8 and its berths and slip, failure to give proper warning or notice of a dangerous condition, and by failing to properly guide, spot, and tie-up the MCCARTHY, FRASER breached its implied warranty of fitness for a particular purpose causing damage to the MCCARTHY and to AMERICAN STEAMSHIP all to its detriment and as previously stated.

## COUNT V:  BREACH OF EXPRESS WARRANTIES AS TO ALL DEFENDANTS

47.   AMERICAN STEAMSHIP realleges and incorporates by reference the allegations in paragraphs 1 through 46, above.

48.   At all times herein alleged, HALLETT expressly warranted to AMERICAN STEAMSHIP, among other things, that: (a) the MCCARTHY could safely dock at Hallett Dock No. 8 for winter lay-up and general maintenance; (b) the berths and the slip within Hallett Dock No. 8 were in good and operable condition without hazards or dangerous obstructions for commercial vessels entering Dock No. 8; (c) any dangerous conditions that existed within Dock No. 8 were properly removed and/or marked and that HALLETT would safely guide, spot, and tie-up the MCCARTHY; (d) the MCCARTHY should and could navigate safely as far into and close to the south shore of the slip at Hallett Dock No. 8 as possible; (e) HALLETT employees/representatives would mark the MCCARTHY's tie-up spot; (f) certain and specific HALLETT employees/representatives would be present at Hallett Dock No. 8 to oversee operations when the MCCARTHY arrived; and (g) HALLETT would provide safe wharfinger and berthing services including, but not limited to, safely guiding, spotting, and tying-up the MCCARTHY into place when it arrived. In expressly warranting the foregoing, HALLETT failed to properly advise AMERICAN STEAMSHIP that a large obstruction of concrete debris was hidden underwater

-19-

and located in the slip at Hallett Dock No. 8. In fact, HALLETT specifically and improperly directed and instructed the AMERICAN STEAMSHIP crew to navigate the MCCARTHY onto the hidden obstruction.

49.    AMERICAN STEAMSHIP is informed and believes and thereon alleges that HALLETT breached the foregoing express warranties by failing to provide a safe dock and slip at Hallett Dock No. 8, by failing to properly maintain the slip and remove the hidden concrete obstruction, by failing to notify AMERICAN STEAMSHIP of the hidden obstruction, and by failing to provide safe wharfinger and berthing services including, but not limited to, failing to safely guide, spot, and tie-up the MCCARTHY into place.

50.    As a proximate result of HALLETT's breach of its express warranties, HALLETT caused damage to the MCCARTHY and damages to AMERICAN STEAMSHIP all to its detriment and as previously stated.

51.    At all times herein alleged, FRASER expressly warranted to AMERICAN STEAMSHIP, among other things, that: (a) the MCCARTHY could safely dock at Hallett Dock No. 8 for winter lay-up and maintenance; (b) the berths and the slip within Hallett Dock No. 8 were in good and operable condition without hazards or dangerous obstructions for commercial vessels entering Dock No. 8; (c) any dangerous conditions that existed within Dock No. 8 were properly removed and/or marked and that FRASER would safely guide, spot, and tie-up the

-20-

MCCARTHY; (d) the MCCARTHY should and could navigate safely as far into and close to the south shore of the slip at Hallett Dock No. 8 as possible; (e) FRASER employees/representatives would mark the MCCARTHY's tie-up spot; (f) certain and specific FRASER employees/representatives would be present at Hallett Dock No. 8 to oversee operations when the MCCARTHY arrived; and (g) FRASER would provide safe wharfinger and berthing services including, but not limited to, safely guiding, spotting, and tying-up the MCCARTHY into place when it arrived. In expressly warranting the foregoing, FRASER failed to properly advise AMERICAN STEAMSHIP that a large obstruction of concrete debris was hidden underwater and located in the slip at Hallett Dock No. 8. In fact, FRASER specifically and improperly directed and instructed the AMERICAN STEAMSHIP crew to navigate the MCCARTHY onto the hidden obstruction.

52. AMERICAN STEAMSHIP is informed and believes and thereon alleges that FRASER breached the foregoing express warranties by failing to provide a safe dock and slip at Hallett Dock No. 8, by failing to properly maintain the slip and remove the hidden concrete obstruction, by failing to notify AMERICAN STEAMSHIP of the hidden obstruction, by failing to provide safe wharfinger and berthing services including, but not limited to, failing to safely guide, spot, and tie-up the MCCARTHY into place.

53.    As a proximate result of FRASER's breach of its express warranties,

HALLETT caused damage to the MCCARTHY and damages to AMERICAN

STEAMSHIP all to its detriment and as previously stated.

## COUNT VI:  NEGLIGENT MISREPRESENTATION AS TO ALL DEFENDANTS

54.    AMERICAN STEAMSHIP realleges and incorporates by reference

the allegations in paragraphs 1 through 53, above.

55.    At all times herein alleged, HALLETT expressly represented to

AMERICAN STEAMSHIP, among other things, that: (a) the MCCARTHY could

safely dock at Hallett Dock No. 8 for proper winter lay-up and general

maintenance; (b) the berths and the slip within Hallett Dock No. 8 were in good

and operable condition without hazards or dangerous obstructions for commercial

vessels entering Dock No. 8; (c) any dangerous conditions that existed within Dock

No. 8 were properly removed and/or marked and that HALLETT would safely

guide, spot, and tie-up the MCCARTHY; (d) the MCCARTHY should and could

navigate safely as far into and as close to the south shore of the slip at Hallett Dock

No. 8 as possible; (e) HALLETT employees/representatives would mark the

MCCARTHY's    tie-up    spot;    (f)    certain    and    specific    HALLETT

employees/representatives would be present at Hallett Dock No. 8 to oversee

operations when the MCCARTHY arrived; and (g) HALLETT would provide safe

wharfinger and berthing services including, but not limited to, safely guiding,

-22-

spotting, and tying-up the MCCARTHY into place when it arrived.  In expressly representing the foregoing, HALLETT failed to properly advise AMERICAN STEAMSHIP that a large obstruction of concrete debris was hidden underwater and located in the slip at Hallett Dock No. 8.  In fact, HALLETT specifically and improperly directed and instructed the AMERICAN STEAMSHIP crew to navigate the MCCARTHY into the hidden obstruction.

56.    The foregoing express representations made by HALLETT were, in fact, false.  As a proximate result of HALLETT's foregoing express misrepresentations, the MCCARTHY sustained substantial physical damages due to impact with the hidden obstruction, requiring reasonable and necessary repairs and resulting in lost revenue and businesses interruption losses, all to the loss and detriment of AMERICAN STEAMSHIP as previously stated.

57.    At all times herein alleged, FRASER expressly represented to AMERICAN STEAMSHIP, among other things, that:  (a) the MCCARTHY could safely dock at Hallett Dock No. 8 for proper winter lay-up and general maintenance; (b) the berths and the slip within Hallett Dock No. 8 were in good and operable condition without hazards or dangerous obstructions for commercial vessels entering Dock No. 8; (c) any dangerous conditions that existed within Dock No. 8 were properly removed and/or marked and that FRASER would safely guide, spot, and tie-up the MCCARTHY; (d) the MCCARTHY should and must

-23-

navigate as far into and as close to the south shore of the slip at Hallett Dock No. 8 as possible; (e) FRASER employees/representatives would mark the MCCARTHY's tie-up spot; (f) certain and specific FRASER employees/representatives would be present at Hallett Dock No. 8 to oversee operations when the MCCARTHY arrived; and (g) FRASER would provide safe wharfinger and berthing services including, safely guiding, spotting, and tying-up the MCCARTHY into place when it arrived. In expressly representing the foregoing, FRASER failed to properly advise AMERICAN STEAMSHIP that a large obstruction of concrete debris was hidden underwater and located in the slip at Hallett Dock No. 8. In fact, FRASER specifically directed and instructed the AMERICAN STEAMSHIP crew to navigate the MCCARTHY into the hidden obstruction.

58. The foregoing express representations made by FRASER were, in fact, false. As a proximate result of FRASER's foregoing express misrepresentations, the MCCARTHY sustained substantial physical damages due to impact with the hidden obstruction, requiring reasonable and necessary repairs and resulting in lost revenue and businesses interruption losses, all to the loss and detriment of AMERICAN STEAMSHIP as previously stated.

### PRAYER FOR RELIEF

WHEREFORE, AMERICAN STEAMSHIP prays for judgment against defendants HALLETT and FRASER as follows:

A.    On Counts I, II, III, IV and V against all defendants, AMERICAN STEAMSHIP prays for a money judgment against HALLETT and FRASER in an amount large enough to fully compensate AMERICAN STEAMSHIP for all of its damages and losses as described herein;

B.    Against all defendants, AMERICAN STEAMSHIP prays for an award of prejudgment and post judgment interest, costs of suit herein and attorneys' fees against HALLETT and FRASER; and

C.    For such other and additional relief as the Court may deem proper and just.

DATED: September 25, 2009

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: _____
      BRENT L. REICHERT (MN No. 144630)
      GERARDO ALCAZAR (MN No. 0386522)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone:  (612) 349-8500
Facsimile:  (612) 339-4181
Email:  BLReichert@rkmc.com
           GAlcazar@rkmc.com

**ATTORNEYS FOR PLAINTIFF**
**AMERICAN STEAMSHIP COMPANY**