# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

AMERICAN STEAMSHIP CO.,
a New York corporation, and
ARMSTRONG STEAMSHIP CO.,
a Delaware corporation,

    Plaintiffs,


v.

        **MEMORANDUM OF LAW & ORDER**
        Civil File No. 09-2628 (MJD/LIB)

HALLETT DOCK CO., a Minnesota
corporation; and FRASER SHIPYARDS,
INC., a Wisconsin corporation,

    Defendants.

Brent L. Reichert, David E. Bland, Gerardo Alcazar, and Richard B. Allyn, Robins Kaplan Miller & Ciresi LLP, Counsel for Plaintiffs.

David R. Hornig and Guerric S. D. L. Russell, Nicoletti Hornig & Sweeney, and Scott A. Witty and John D. Kelly, Hanft Fride PA, Counsel for Defendant Hallett Dock Co.

Christopher J. DiCicco, Edward C. Radzik, and Laura V. Block, Marshall Dennehey Warner Coleman & Goggin, and Nicholas Ostapenko and Paul W. Wojciak, Johnson Killen & Seiler, Counsel for Defendant Fraser Shipyards, Inc.


## I.  INTRODUCTION

This matter is before the Court on the parties' motions in limine.  Trial is set to begin on February 5, 2013.

## A.      Brief Background

The facts of the case are laid out in detail in the Court's March 23, 2012 Order on summary judgment.  [Docket No. 315]; <u>Am. S.S. Co. v. Hallett Dock Co.</u>, 862 F. Supp. 2d 919 (D. Minn. 2012).  Briefly, this case arises out of an accident involving the Walter J. McCarthy, Jr. ("McCarthy"), a one thousand foot freight ship owned and operated by Plaintiffs American Steamship Company and Armstrong Steamship Company (collectively, "ASC").  On January 14, 2008, the McCarthy struck underwater debris as it was entering a slip at a Superior, Wisconsin dock owned by Defendant Hallett Dock Company ("Hallett").  ASC had entered into a separate agreement with Defendant Fraser Shipyards, Inc. ("Fraser"), under which Fraser would repair the McCarthy over the winter and also provide line and anchor handling upon the McCarthy's arrival for winter layup.  The parties dispute what was told by whom and to whom regarding the debris in the slip.  According to the McCarthy crewmembers, Fraser employees guided the McCarthy into the slip.

## B.      Generally Applicable Legal Standards

### 1.  **_Daubert_ Standard**

The admissibility of expert testimony is governed by Federal Rule of

Evidence 702.  The proponent of the testimony has the burden to show by a

preponderance of the evidence that the testimony is admissible under Rule 702.

Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001).  Under the Rule:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge
> will help the trier of fact to understand the evidence or to determine
> a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods;
> and
>
> (d) the expert has reliably applied the principles and methods to the
> facts of the case.

Fed. R. Evid. 702.

"Under the framework developed in Daubert, trial courts must serve as

gatekeepers to insure that proffered expert testimony is both relevant and

reliable.  Trial courts are given broad discretion in fulfilling this gatekeeping role

. . . ."  Wagner v. Hesston Corp., 450 F.3d 756, 758 (8th Cir. 2006) (citations

omitted).  The proposed testimony must be useful to the factfinder; the expert

witness must be qualified; and the proposed evidence must be reliable.  <u>Lauzon</u>,

270 F.3d at 686.  "[D]oubts regarding whether an expert's testimony will be

useful should generally be resolved in favor of admissibility."  <u>Miles v. Gen.</u>

<u>Motors Corp.</u>, 262 F.3d 720, 724 (8th Cir. 2001) (citation omitted).

"Gaps in an expert witness's qualifications or knowledge generally go to

the weight of the witness's testimony, not its admissibility."  <u>Robinson v. GEICO</u>

<u>Gen. Ins. Co.</u>, 447 F.3d 1096, 1100 (8th Cir. 2006) (citation omitted).

In determining the reliability and relevance of the proffered testimony, the

Court examines factors such as

> whether the theory or technique is subject to testing, whether it has
> been tested, whether it has been subjected to peer review and
> publication, whether there is a high known or potential rate of error
> associated with it, and whether it is generally accepted within the
> relevant community.

<u>Unrein v. Timesavers, Inc.</u>, 394 F.3d 1008, 1011 (8th Cir. 2005) (citation omitted).

However, "[t]his evidentiary inquiry is meant to be flexible and fact specific, and

a court should use, adapt, or reject <u>Daubert</u> factors as the particular case

demands.  There is no single requirement for admissibility as long as the proffer

indicates that the expert evidence is reliable and relevant."  <u>Id.</u> (citation omitted).

If a party believes that an expert opinion has not considered all of
the relevant facts, an objection to its admission is appropriate.  Even

4

> a theory that might meet certain <u>Daubert</u> factors, such as peer
> review and publication, testing, known or potential error rate, and
> general acceptance, should not be admitted if it does not apply to
> the specific facts of the case.

<u>Concord Boat Corp. v. Brunswick Corp.</u>, 207 F.3d 1039, 1056 (8th Cir. 2000)

(citations and footnote omitted).  However,

> [a]s a general rule, the factual basis of an expert opinion goes to the
> credibility of the testimony, not the admissibility, and it is up to the
> opposing party to examine the factual basis for the opinion in cross-
> examination.  Only if the expert's opinion is so fundamentally
> unsupported that it can offer no assistance to the jury must such
> testimony be excluded.

<u>Bonner v. ISP Techs., Inc.</u>, 259 F.3d 924, 929-30 (8th Cir. 2001) (citation omitted).

### 2.      Disclosure of Lay Witness and Expert Witness Testimony

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires a party to provide to

the other parties: "the name and, if known, the address and telephone number of

each individual likely to have discoverable information – along with the subjects

of that information – that the disclosing party may use to support its claims or

defenses, unless the use would be solely for impeachment."  Federal Rule of Civil

Procedure 26(a)(2)(B) requires that a party provide a "complete statement of all

opinions the [expert] witness will express and the basis and reasons for them" in

an expert report.  Rule 37 states that a party who fails to provide information or

identify witnesses as required under Rule 26(a) "is not allowed to use that

information or witness to supply evidence . . . at trial, unless the failure was

substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  In this case,

discovery closed on May 6, 2011.  [Docket No. 84]

## II.    Plaintiffs' Motions in Limine

### A.    [328] Plaintiffs' Motion in Limine to Exclude All Evidence Related to ASC's Insurance Policies, Subrogated Insurance Carriers, and Insurance Claims, Adjustment, Deductibles, and Payments

The Court grants Plaintiffs' motion.  Evidence relating to ASC's insurance

policies, subrogated insurance carriers, insurance claims, insurance adjustment,

insurance deductibles, and insurance payments is not relevant to the issues to be

tried.  Such evidence would shift the jury's focus to ASC's perceived

compensation with insurance funds and the danger of unfair prejudice would

substantially outweigh any probative value.  See Fed. R. Evid. 403.  Moreover,

Fraser does not oppose Plaintiffs' motion except to the extent that Fraser seeks to

establish the value of the McCarthy for purposes of Fraser's equitable

recoupment defense on account of its salvage efforts.  Because the Court is

disallowing Fraser's salvage recoupment claim, Fraser has no basis for seeking to

admit this evidence.

**B.     [330] Plaintiffs' Motion in Limine to Exclude Evidence Contrary to Mike Podgorak's Undisputed Employment**

The Court grants Plaintiffs' motion.  Fraser does not oppose Plaintiffs' motion to exclude all evidence from trial that would suggest that Mike Podgorak is employed by anyone other than now-dismissed Defendant Chris Jensen & Son Co., Inc. ("CJS").

**C.     [333] Plaintiffs' Motion in Limine to Exclude Certain Testimony of Hallett Dock Company's Expert Witness Captain John Olthuis**

The Court grants Plaintiffs' motion to exclude four areas of testimony from Hallett's expert witness Captain John Olthuis, thereby limiting his opinions to those provided in his expert report.  The four areas Plaintiffs seek to exclude are: 1) the reasonableness of Ken Gliwa's actions or Plaintiffs' actions as owner, license holder, or operator of the McCarthy; 2) the reasonableness of Hallett's conduct leading up to the holing and flooding of the McCarthy; 3) the reasonableness of the conduct of RJS Construction, LLC ("RJS"), CJS, and Reuben Johnson & Son, Inc. ("Reuben Johnson"); and 4) the contractual terms and agreements between Hallett and Plaintiffs.  Olthuis did not opine on these subjects in his expert report and testified that he has no opinions on them. Hallett does not argue in favor of admission of such testimony.

The Court further denies Hallett's wholly inappropriate request for Rule 11 sanctions based on the alleged frivolousness of Plaintiffs' motion.  Hallett's motion does not comply with the basic requirements of Rule 11.  It was not filed as a separate motion, and there was no safe harbor during which Plaintiffs could have withdrawn the disputed motion in limine before Hallett filed the Rule 11 motion.  Fed. R. Civ. P. 11(c)(2); <u>Gordon v. Unifund CCR Partners</u>, 345 F.3d 1028, 1029-30 (8th Cir. 2003).  Such blatantly improper motions will not be tolerated in the future and will likely result in swift sanctions from this Court.

The Court further denies Plaintiffs' attempt to escalate the firefight by requesting an award of their own attorneys' fees expended in responding to the improper Rule 11 motion.  The parties appear to agree that Olthuis should not testify on the disputed subjects.  Counsel could have avoided this escalating motion practice by professionally communicating directly with one another.  Counsel are directed to do so in the future.

**D.    [336] Plaintiffs' Motion in Limine to Exclude Certain Testimony of Fraser Shipyards, Inc.'s Expert Witness Captain Robert Libby**

The Court grants Plaintiffs' motion to exclude the following opinion testimony from Fraser expert Captain Robert Libby because he did not opine on these subjects in his expert report and testified that he did not and cannot offer

an opinion on them: 1) the reasonableness or unreasonableness of RJS's, CJS's,

and Reuben Johnson's conduct leading up to the holing of the McCarthy; 2) the

contractual agreements between Fraser and ASC; or 3) the reasonableness of

ASC's damages.  Fraser agrees that Libby will not testify on those issues.

**E.      [340] Plaintiffs' Motion in Limine to Exclude All Evidence, Related to Fraser Shipyard's Untimely Salvage "Counterclaim" and "Defense" and [364] Fraser Shipyards' Motion in Limine**

The Court grants Plaintiffs' motion to prevent Fraser from introducing all

evidence related to a salvage counterclaim or salvage affirmative defense and

denies Fraser's motion for an order of salvage recoupment as a matter of law or a

jury instruction on the same.  At the outset, the Court notes that it has not

previously ruled on the viability of Fraser's recoupment claim.  In its summary

judgment Order, the Court explicitly stated that it did not need to address the

salvage claim.  Am. S.S. Co. v. Hallett Dock Co., 862 F. Supp. 2d 919, 931 (D.

Minn. 2012).

**1.      Waiver of the Salvage Defense**

Fraser failed to plead salvage as an affirmative defense in its Answer, and,

therefore, waived the defense.  Fraser did not allege salvage as a counterclaim.  It

did not seek to amend its pleadings to add a salvage counterclaim or defense.

Discovery closed on May 6, 2011.  [Docket No. 84]  On July 25, 2011, in its

Opposition to ASC's Motion for Partial Summary Judgment Against All

Defendants, Fraser asserted for the first time that it "is entitled, as a set off to any

damages which plaintiffs seek, to an award for marine salvage."  ([Docket No.

229] Opposition at 2.)

Federal Rule of Civil Procedure 8(c) requires that all affirmative defenses

must be asserted in the responsive pleading.  However, Fraser failed to raise

salvage until its opposition to summary judgment, after discovery had closed.

Fraser has waived the affirmative defense of salvage.  See Sherman v. Winco

Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008) ("Generally, failure to plead an

affirmative defense results in the waiver of that defense.  However, when an

affirmative defense is raised in the trial court in a manner that does not result in

unfair surprise, technical failure to comply with Rule 8(c) is not fatal.") (citations

omitted).  See also The Camanche, 75 U.S. 448, 477 (1869) ("Defen[s]es in salvage

suits, as well as in other suits in admiralty, must be set up in the answer;" and

the failure to include a defense in an answer is "sufficient to show that [the

defense] cannot be sustained.").  By raising maritime salvage after the close of

discovery, Fraser created an unfair surprise, preventing Plaintiffs from

10

conducting any discovery on this theory which, potentially, could entirely wipe out Plaintiffs' damages claim.  Fraser's claim that it did not know about the salvage defense until May 2011, is specious.  Fraser knew that it immediately provided repairs to the McCarthy after it was holed.  It specifically invoiced ACS for those salvage repairs in March 2008.

### 2.      Merits of the Salvage Claim

Even if Fraser had not waived it salvage claim, the Court would grant Plaintiffs' motion.

"The admiralty and maritime law of salvage rewards the voluntary salvor for his successful rescue of life or property imperiled at sea." Ocean Servs. Towing & Salvage, Inc. v. Brown, 810 F. Supp. 1258, 1262 (S.D. Fla. 1993) (citing Mason v. The Blaireau, 6 U.S. 240 (1804)).  "The award on an action for salvage— unknown for land activities—is not one of quantum meruit as compensation for work performed, but is a bounty historically given in the interests of public policy, to encourage the humanitarian rescue of life and property at sea, and to promote maritime commerce." Id. (citing, e.g., The Blackwall, 77 U.S. 1 (1869)). In order to succeed on a salvage claim, a plaintiff must prove: "1. A marine peril. 2. Service voluntarily rendered when not required as an existing duty or from a

special contract.  3. Success in whole or in part, or that the service rendered contributed to such success." The Sabine, 101 U.S. 384, 384 (1879).  Most significantly, "persons who have contributed to place property in danger cannot be allowed to claim reward for rescuing it from the consequences of their own wrongful acts." The Clarita, 90 U.S. 1, 18-19 (1874).

Here, Fraser only asserts salvage as a recoupment or set off – not as an affirmative means of recovery, which would run afoul of the statute of limitations.  Thus, salvage is only asserted as a defense to reduce any damages owed by Fraser to ACS.  So, the salvage issue is not relevant if the jury finds that Fraser is not liable for damages to ACS because there would be no damages to reduce.  On the other hand, if the jury finds that Fraser is liable for damages to ACS in some way because Fraser contributed to the holing, then Fraser cannot collect a salvage award because it contributed to creating the peril from which it rescued ACS.  See, e.g., The Clarita, 90 U.S. at 18-19; The Pine Forest, 129 F. 700, 704 (1st Cir. 1904) (holding that "under all the authorities and on principle, a towage contract cannot be converted under the admiralty law into a salvage service under conditions brought about by the fault of the tug"); The Homely, 12 F. Cas. 454, 454 (E.D.N.Y. 1876) ("I am unwilling to permit that a tug employed to

tow a vessel into the port should, through want of care, tow the vessel upon the Romer Shoal and then receive salvage compensation for towing her off."). Thus, whether or not the jury finds Fraser at fault, salvage would not apply.

### F.   [343] Plaintiffs' Motion in Limine to Exclude the January 31, 2008 Memorandum Prepared by Hallett Dock Company CEO Jeremy Fryberger

The Court grants Plaintiffs' motion to exclude the January 31, 2008 memorandum prepared by Hallett CEO Jeremy Fryberger for the Hallett Board of Directors. The document is inadmissible hearsay and is not based on Fryberger's personal knowledge. It does not fall under the business record exception because it was not made in regularly conducted business activities and it inherently lacks trustworthiness. See F.R.E. 803(6). Moreover, Hallett does not offer any argument in favor of admission of the memorandum.

The Court further denies Hallett's wholly inappropriate request for Rule 11 sanctions based on the alleged frivolousness of Plaintiffs' motion. Hallett's motion does not comply with the basic requirements of Rule 11. It was not filed as a separate motion, and there was no safe harbor during which Plaintiffs could have withdrawn the disputed motion in limine before Hallett filed the Rule 11 motion. Fed. R. Civ. P. 11(c)(2); Gordon v. Unifund CCR Partners, 345 F.3d 1028,

1029-30 (8th Cir. 2003).  Such blatantly improper motions will not be tolerated in the future and will likely result in swift sanctions from this Court.

The Court further denies Plaintiffs' attempt to escalate the firefight by requesting an award of their own attorneys' fees in responding to the improper Rule 11 motion.  The parties appear to agree that the memorandum should not be admitted.  Counsel could have avoided this escalating motion practice by professionally communicating directly with one another.  Counsel are directed to do so in the future.

## G.    [347] Plaintiffs' Motion in Limine to Exclude Evidence of the United States Coast Guard Report

The Court grants Plaintiffs' motion to exclude the U.S. Coast Guard Report of Investigation into the Circumstances Surrounding the Incident Involving M/V Walter J. McCarthy Jr. Grounding on 01/14/2008 ("Coast Guard Report").  By statute, Congress has prohibited admission of any Coast Guard report in a private civil action:

> Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.

46 U.S.C. § 6308(a).

The Court further holds that the portion of any expert opinion that relies on or is substantially based on the Coast Guard Report is inadmissible, although the rest of the expert opinion is still admissible.  See, e.g., United States v. Egan Marine Corp., 808 F. Supp. 2d 1065, 1074 (N.D. Ill. 2011).  The Coast Guard Report itself may not be used to refresh a witness's recollection or for impeachment.  Use of the Report to refresh a witness's recollection could lead to an attempt to introduce the Report by the opposing party.  Fed. R. Evid. 612.  Use of the Report as extrinsic evidence of a prior inconsistent statement for impeachment could lead to an attempt by the opposing party to examine the witness about the details of the Report.  Fed. R. Evid. 613.  Congress clearly provided that, "[n]otwithstanding any other provision of law, no part of a [Coast Guard] report" shall be admissible in a civil trial.  The parties are not permitted to make an end-run around the statute.

Finally, in Hallett's response, it briefly raises the issue of certain witness statements obtained by the Coast Guard.  Those statements are not the subject of the current motion, and the Court does not have enough information to make a ruling on their admissibility at this time based solely on Hallett's brief discussion.  The Court reserves ruling on this issue.

**H.** **[350] Plaintiffs' Motion in Limine to Exclude Evidence Related to Certain of Fraser Shipyards, Inc.'s and Hallett Dock Company's Affirmative Defenses**

The Court grants in part and denies in part Plaintiffs' motion.  The Court grants Plaintiffs' motion to exclude all evidence related to the following affirmative defenses by Fraser: Fourth (statute of frauds); Seventh (failure to join tugboat operators); Eighth (ASC is not the real party in interest); Tenth (laches); Eleventh (contract modification and accord and satisfaction); and Thirteenth (acted as a wharfinger and acted as an agent in distress), because Fraser has agreed to withdraw these affirmative defenses.

The Court denies Plaintiffs' motion to exclude evidence related to Fraser's Ninth affirmative defense (failure to mitigate) and Hallett's affirmative defense of failure to mitigate contained in Paragraph 57 of Hallett's Answer. First, Defendants' allegations of failure to mitigate relate, in part, to an allegation of a failure to mitigate damages by not using the rest of the ASC fleet to take on the McCarthy's cargo.  This issue is not addressed in the cited testimony of either Gene Walroos or Mike Peterson.  Second, when the full portion of Peterson's testimony is reviewed, it is clear that he is testifying that he believes that Fraser did an efficient job in its performance of the repairs, but that ACS hindered that

effort.  His testimony supports Fraser's defense.  Third, Hallett is not bound by Fraser witnesses regarding their opinion of the efficiency of the repairs.

### I.     [353] Plaintiffs' Motion in Limine to Exclude Evidence of Certain Testimony of Hallett Dock Company's Expert Joseph Kenyon

The Court denies Plaintiffs' motion to exclude the testimony of Hallett's damages expert Joseph Kenyon.  Plaintiffs, not Defendants, have the burden to prove their damages.  Kenyon was hired to analyze the lost profits damage calculation prepared by Plaintiffs' expert, Gary Turnquist, and to explain his opinion that Turnquist's analysis is flawed, which, in turn, forms the basis for Defendants' argument that Plaintiffs have not met their burden to prove their damages.  Thus, Kenyon is not obligated to provide his own specific number for Plaintiffs' damages.  The thrust of his analysis and opinion is that there is not enough information to prove a specific damages number and that it is likely that there are no or very little damages.  Plaintiffs' claim that Kenyon testified that he did not know the answers to Plaintiffs' basic deposition questions is based on out-of-context quotations.  Any weaknesses in Kenyon's analysis can be addressed on cross examination.

### J.     [375] Plaintiffs' Motion in Limine to Exclude Certain Testimony of Fraser Shipyards, Inc.'s Expert John R. Dudley

The Court grants Plaintiffs' motion to exclude portions of the testimony of

Fraser's expert Captain John R. Dudley.  Dudley admittedly has no knowledge of

Great Lakes norms; his knowledge and experience are limited to ocean norms.

Thus, the Court excludes Dudley's testimony regarding the International Safety

Management Code, safe berth clauses, and the Under-Keel Clearance standard.

Additionally, the Court excludes any testimony by Dudley regarding 1) the

reasonableness of Fraser's, RJS's, CJS's, and Reuben Johnson's conduct leading

up to the holing of the McCarthy; 2) the contractual agreements between Fraser

and ASC; and 3) the reasonableness of ASC's damages, because these areas were

not covered by Dudley's expert report, and Fraser does not advocate for their

admission.

**K.     [414]  Motion in Limine to Exclude Hallett Dock Company's Witness, Jim Sharrow, From Testifying at Trial**

The Court denies Plaintiffs' motion to exclude Hallett proposed witness

Jim Sharrow, the facilities manager of the Seaway Port Authority in Duluth.  His

testimony is not irrelevant.  Technically, Hallett properly updated its Rule 26(a)

to disclose Sharrow within the discovery period.  Although it appears less than

forthright that Hallett supplemented its disclosures to identify Sharrow on the

very last day of discovery, that incident was almost two years ago.  Plaintiffs

could have easily made a motion to reopen discovery if they wanted to depose Sharrow.  Waiting almost two years to protest that, indeed, they wish they had deposed him belies their claim of prejudice.

## III.    [364] Fraser Shipyards' Motion in Limine

For the reasons previously explained, the Court denies Fraser's motion for an order for equitable recoupment, or, in the alternative, a jury instruction on the issue of equitable recoupment for its salvage efforts.

## IV.    Hallett Dock's Motions in Limine

### A.     [389] Hallett Dock's Motion in Limine (1) Preclude ASC Expert Arthur Faherty from Testifying as an Expert

The Court denies Hallett's motion to preclude ASC expert Arthur Faherty from testifying as an expert.  Faherty has been designated by ASC to testify about the duties and responsibilities of Hallett, as the wharfinger, and Fraser, as the shipyard, for the docking of the McCarthy for winter layup in January 2008. Faherty meets the minimum qualifications required to provide expert testimony in these areas.  For two years, he owned a shipyard with three dry docks and one 700 foot lay berth, and he was involved in berthing ships at his dock, even if the vast majority were MARAD vessels.  His lack of extensive experience as a wharfinger can be explored on cross examination.

The Court further concludes that Faherty's testimony is useful.  The fact that he relied on his personal experience, and not statutes or treatises, is of no consequence – Hallett does not any identify any statute or treatise upon which Faherty should have relied.  Hallett's own expert, Captain John Olthuis, testified that he relied on his own experience and not statutes when forming his opinion. Faherty can be cross examined with respect to the issue of his opinion that a reasonable captain would or would not have proceeded if he had been told of the debris.

**B.      [389] Hallett Dock's Motion in Limine (2) Strike ASC's Claim for Loss of Profits**

The Court denies Hallett's motion to strike ASC's claim for lost profits. ASC has made a claim for loss of profits for the period of time when the McCarthy was out of service following the opening of the locks on the Great Lakes.  Hallett claims that the only direct evidence of a loss of profits are alleged emails that ASC received from its client Seaway Marine Transport ("Seaway Marine") in which Seaway Marine complained that it wanted ASC to transport more cargo than ASC was able to do without the McCarthy.  ASC's Assistant Vice President and Traffic Manager, Charlie Dean, testified that most of the communications with Seaway Marine, in which it requested that ASC transport

more coal, were by telephone, but if there were email communications he did not

have them in his possession because they were auto-deleted.  Hallett requests

spoliation sanctions based on the possible auto-deletion of emails from Seaway

Marine.

The Court declines to impose any sanction.  First, the evidence before the

Court is that, if any emails existed, they were destroyed based on a routine

document retention policy before litigation commenced, and there is no showing

whatsoever of bad faith or an intent to suppress the truth.  See Stevenson v.

Union Pac. R.R. Co., 354 F.3d 739, 746-47 (8th Cir. 2004) (holding that use of an

adverse inference instruction based on "prelitigation destruction of evidence

through a routine document retention policy" requires "some indication of an

intent to destroy the evidence for the purpose of obstructing or suppressing the

truth").

Second, it is not clear that any relevant documents were destroyed because

the testimony is that Seaway Marine's requests for shipping were generally made

over the telephone, not on email.  Plaintiffs rely on testimony from Dean and

Mark Pietrocarlo, not the alleged existence of emails from Seaway Marine, to

calculate their lost profits.  Nor does Plaintiffs' expert, Gary Turnquist, rely on

such emails.  As Dean testified, most of his communications with Seaway Marine were telephone calls rather than emails.  None of the testimony cited by Hallett shows that the emails involved contained relevant information.

Third, if emails showing that Seaway Marine requested more shipping than ASC could provide did exist, then they would be helpful to Plaintiffs' claim, not to Hallett's defense, so the fact that they do not exist for trial already prejudices Plaintiffs – there is no documentary proof to bolster their claim – not Hallett.

### C.    [389] Hallett Dock's Motion in Limine (3) Preclude John Adler and Shawn Mulley from Testifying as Witnesses for ASC

The Court denies Hallett's motion to exclude John Adler, an investigator with Robins, Kaplan, Miller & Ciresi who was present at several inspections of Hallett Dock No. 8 and the McCarthy.  Plaintiffs should have disclosed Adler in their Rule 26(a) disclosures.  However, his name and role as investigator have been known to defense counsel since May 9, 2008, before this lawsuit was filed.  Additionally, he is only being called to authenticate documents, such as photographs and an invoice, which were produced to Defendants in a timely manner.  There is no unfair surprise to Defendants.

The Court denies Hallett's motion to exclude Shawn Mulley as moot because Plaintiffs have now withdrawn him as a witness.

### D.  [389] Hallett Dock's Motion in Limine (4) Preclude Neil Kent from Testifying about the McCarthy's Approach into Hallett Dock No. 8 and the Presence of Fraser Shipyard Personnel on the Dock

The Court denies Hallett's motion to preclude ASC from calling Neil Kent as a witness to testify about the McCarthy's approach into Hallett Dock No. 8 and the presence of Fraser personnel on the dock.  ASC identified Kent in its Rule 26(a) disclosures and stated that his area of knowledge was "photographs." Having Kent testify about taking the photographs, whether they are accurate, and what he saw as he took them does not stray outside the bounds of the disclosure or unfairly surprise Defendants.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1.   Plaintiffs' Motion in Limine to Exclude All Evidence Related to ASC's Insurance Policies, Subrogated Insurance Carriers, and Insurance Claims, Adjustment, Deductibles, and Payments [Docket No. 328] is **GRANTED**.

2.   Plaintiffs' Motion in Limine to Exclude Evidence Contrary to Mike Podgorak's Undisputed Employment [Docket No. 330] is **GRANTED**.

3.    Plaintiffs' Motion in Limine to Exclude Certain Testimony of
      Hallett Dock Company's Expert Witness Captain John Olthuis
      [Docket No. 333] is **GRANTED**.

4.    Plaintiffs' Motion in Limine to Exclude Certain Testimony of
      Fraser Shipyards, Inc.'s Expert Witness Captain Robert Libby
      [Docket No. 336] is **GRANTED**.

5.    Plaintiffs' Motion in Limine to Exclude All Evidence, Related
      to Fraser Shipyard's Untimely Salvage "Counterclaim" and
      "Defense" [Docket No. 340] is **GRANTED**.

6.    Plaintiffs' Motion in Limine to Exclude the January 31, 2008
      Memorandum Prepared by Hallett Dock Company CEO
      Jeremy Fryberger [Docket No. 343] is **GRANTED**.

7.    Plaintiffs' Motion in Limine to Exclude Evidence of the United
      States Coast Guard Report [Docket No. 347] is **GRANTED**.

8.    Plaintiffs' Motion in Limine to Exclude Evidence Related to
      Certain of Fraser Shipyards, Inc.'s and Hallett Dock
      Company's Affirmative Defenses [Docket No. 350] is
      **GRANTED IN PART** and **DENIED IN PART** as follows: the
      motion is granted as to Fraser's Fourth, Seventh, Eighth,
      Tenth, Eleventh, and Thirteenth affirmative defenses and
      denied as to Fraser's Ninth affirmative defense (failure to
      mitigate) and Hallett's failure to mitigate defense.

9.    Plaintiffs' Motion in Limine to Exclude Evidence of Certain
      Testimony of Hallett Dock Company's Expert Joseph Kenyon
      [Docket No. 353] is **DENIED**.

10.   Plaintiffs' Motion in Limine to Exclude Certain Testimony of
      Fraser Shipyards, Inc.'s Expert John R. Dudley [Docket No.
      375] is **GRANTED**.

11.   Plaintiffs' Motion in Limine to Exclude Hallett Dock Company's Witness, Jim Sharrow, From Testifying at Trial [Docket No. 414] is **DENIED**.

12.   Fraser Shipyards' Motion in Limine [Docket No. 364] is **DENIED**.

13.   Hallett Dock's Motion in Limine [Docket No. 389] is **DENIED** as follows:

    a.   Part 1: To Preclude ASC Expert Arthur Faherty from Testifying as an Expert is **DENIED**;

    b.   Part 2: To Strike ASC's Claim for Loss of Profits is **DENIED**;

    c.   Part 3: To Preclude John Adler and Shawn Mulley from Testifying as Witnesses for ASC is **DENIED**; and

    d.   Part 4: To Preclude Neil Kent from Testifying about the McCarthy's Approach into Hallett Dock No. 8 and the Presence of Fraser Shipyard Personnel on the Dock is **DENIED**.


Dated:  January 25, 2013      s/ Michael J. Davis
                                Michael J. Davis
                                Chief Judge
                                United States District Court