UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

AMERICAN STEAMSHIP CO.,
a New York corporation, and
ARMSTRONG STEAMSHIP CO.,
a Delaware corporation,

        Plaintiffs,

v().                      **MEMORANDUM OF LAW & ORDER**
                           Civil File No. 09-2628 (MJD/LIB)

HALLETT DOCK CO., a Minnesota
corporation,

        Defendant.

Brent L. Reichert, David E. Bland, Gerardo Alcazar, and Richard B. Allyn, Robins Kaplan Miller & Ciresi LLP, Counsel for Plaintiffs.

David R. Hornig and Guerric S. D. L. Russell, Nicoletti Hornig & Sweeney, and Scott A. Witty and John D. Kelly, Hanft Fride PA, Counsel for Defendant Hallett Dock Co.

## I. INTRODUCTION

This matter is before the Court on Defendant Hallett Dock Company's Motion for a New Trial or, in the Alternative, to Amend the Judgment. [Docket No. 476]

This matter was tried before a jury and, on February 21, 2013, the jury returned its verdict. The jury found that Defendant Hallett Dock Company ("Hallett") breached its contract with Plaintiffs American Steamship Company and Armstrong Steamship Company (collectively, "ASC"), breached implied and express warranties, was liable for negligent misrepresentation, and was negligent, and that all of these breaches were a direct cause of the damage to the Walter J. McCarthy, Jr. ("McCarthy"). It found that Fraser Shipyards, Inc. ("Fraser") was negligent, but that its negligence was not a direct cause of damage to the McCarthy. It further found that ASC was not negligent. The jury awarded $4,682,322.55 in damages, and attributed 100% of the fault to Hallett. On February 25, 2013, the Court entered judgment on the jury's verdict.

Hallett now requests a new trial pursuant to Federal Rules of Civil Procedure 50(b), 59(c), and 59(e). Alternatively, it requests that the Court amend the Judgment and reduce the award by $87,678.90.

## II. MOTION FOR A NEW TRIAL

Hallett moves for a new trial on four grounds.

### A. Sufficiency of the Evidence

First, Hallett claims that there is insufficient evidence to support the jury's finding that ASC and Fraser were not liable for a portion of the damages. It

2

claims that the jury erred in concluding that ASC was not negligent and in concluding that Fraser's negligence was not a direct cause of the holing of the McCarthy.

The Court has broad discretion in deciding whether to grant a new trial. Pulla v. Amoco Oil Co., 72 F.3d 648, 656 (8th Cir. 1995). "A new trial is appropriate when the outcome is against the great weight of the evidence so as to constitute a miscarriage of justice." Boesing v. Spiess, 540 F.3d 886, 890 (8th Cir. 2008) (citation omitted). In determining whether a new trial is warranted, the Court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992). "[T]he true standard for granting a new trial on the basis of the weight of the evidence is simply one which measures the result in terms of whether a miscarriage of justice has occurred. When through judicial balancing the trial court determines that the first trial has resulted in a miscarriage of justice, the court may order a new trial, otherwise not." Id. (citation omitted).

Here, the Court presided over the in-depth trial of this case and has carefully reviewed the record. The Court concludes that the jury's verdict is just

and is strongly supported by the evidence at trial. The Court is thoroughly satisfied that no miscarriage of justice has occurred.

**B.      Oregon Rule**

Second, Hallett claims that the Court erred by not instructing the jury on the Oregon Rule. It asserts that the evidence presented at trial supported a finding that ASC knew or should have known about the debris in the slip, so the Oregon Rule applied. The Oregon Rule "raises a presumption that a vessel's crew was negligent when a vessel strikes a stationary object such as a bridge." Union Pac. R.R. Co. v. Kirby Inland Marine, Inc. of Miss., 296 F.3d 671, 673 (8th Cir. 2002). The Oregon Rule does not generally apply to allisions with hidden, sunken, or submerged objects, but it may apply where "knowledge of an otherwise nonvisible object warrants imposition of presumed negligence against those operating the vessel who possessed this knowledge." Delta Transload, Inc. v. M/V Navios Commander, 818 F.2d 445, 450 (5th Cir. 1987). The party invoking the presumption bears the "burden to prove either visibility or knowledge." Id.

A new trial is required "only if the error [in jury instructions] misled the jury or had a probable effect on its verdict." Burry v. Eustis Plumbing & Heating, Inc., 243 F.3d 432, 434 (8th Cir. 2001) (citation omitted). A district court abuses its discretion by refusing to adopt a proposed jury instruction when the

4

proposed instruction: "(1) correctly state[s] the applicable law; (2) address[es] matters not adequately covered by the charge; and (3) involve[s] a point so important that failure to give the instruction seriously impaired the party's ability to present an effective case." Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 496 (8th Cir. 1998) (citation omitted). The third factor incorporates the "requirement that failure to give a proposed instruction must result in prejudice to the requesting party before a new trial will be ordered." Id. at 497.

The Court thoroughly addressed this issue in its Order on the motions for summary judgment. As the Court explained, even if the Oregon Rule were applicable, the Pennsylvania Rule applies to the case and, therefore, the burden shifted to Hallett. The Court determines that it did not err in refusing to give the Oregon Rule instruction. Additionally, the Oregon Rule did not, in fact apply, because the evidence at trial showed, and the jury found, that ASC was not specifically informed of the hidden obstruction. For example, as the jury specifically found pursuant to Jury Instruction No. 31, ASC was not negligent – that is, the evidence did not show and the jury did not find that ASC was informed of the location of the obstruction and ignored the instructions provided and were thereby negligent. Moreover, even if the Oregon Rule had applied,

5

there was no prejudice to Hallett because, as the jury found, Hallett's violations of federal statutes did contribute to the holing of the McCarthy.

### C. Warning Sign

Third, Hallett asserts that the Court erred in admitting ASC Trial Exhibit No. 24, a warning sign created by ASC after the incident. It claims that ASC failed to offer any foundation to show that the warning sign was an appropriate method to mark the debris in order to comply with the Wreck Act. It also asserts that allowing this evidence changed the issue before the jury from whether Hallett's actions were reasonable under the circumstances to what Hallett could have done to prevent the accident from occurring.

"An allegedly erroneous evidentiary ruling does not warrant a new trial unless the evidence was so prejudicial that a new trial would likely produce a different result." Harrison v. Purdy Bros. Trucking Co., Inc., 312 F.3d 346, 351 (8th Cir. 2002) (citation omitted).

During trial, when ASC offered Exhibit 24, the Court specifically asked Hallett what its objection to the exhibit was. Hallett stated: "Our objection is relevancy and it was a sign that was produced and created by counsel." Thus, regardless of its objections noted in its pretrial disclosures, Hallett waived any objection to Exhibit 24, other than relevance. See State Farm Mut. Auto. Ins. Co.

6

v. Lincow, 715 F. Supp. 2d 617, 635 n.16 (E.D. Pa. 2010) ("Defendants failed to object to this piece of evidence on the basis of improper foundation at trial and, thus, this objection is waived for purposes of post-trial review."), aff'd 444 Fed. App'x 617 (3d Cir. 2011).

In any case, the Court concludes that its admission of the Warning Sign exhibit was not erroneous. There is no debate that Hallett had a duty to mark the obstruction and that it wholly failed to do so. Hallett's own witnesses testified that use of such a sign would have been prudent and helpful to ASC. (Trial Tr. Vol. VI, McCoshen Testimony at 224-26.) The exhibit was relevant to the undisputed fact that Hallett wholly failed to mark the obstructive debris and to ASC's theory that a sign similar to that exhibit would have been feasible and would have prevented the holing and flooding of the McCarthy. Admission of the sign was relevant and helpful to the jury. Its relevance outweighed any potential for unfair prejudice or confusion. In any case, admission of Exhibit 24 caused no prejudice to Hallett.

**D. Cause of the Holing**

Fourth, Hallett asserts that the Court's application of the Pennsylvania Rule was tantamount to an erroneous instruction to the jury that the debris caused the holing. The Pennsylvania Rule applies when three elements exist:

7

> (1) proof by a preponderance of the evidence of violation of a statute or regulation that imposes a <u>mandatory duty</u>; (2) the statute or regulation must involve <u>marine safety</u> or navigation; and (3) the injury suffered must be of a nature that the statute or regulation was intended to prevent.

<u>Union Pac. R.R. Co.</u>, 296 F.3d at 674 (citation omitted) (emphasis in original). Hallett argues that ice, not the debris, caused the holing, so there was a fact issue regarding whether the third element applied.

First, the Court did not instruct the jury that the debris caused the holing. In fact, Jury Instruction No. 22 instructed the jury that Hallett could overcome the presumption of negligence if it could show that its violations of federal law could not have contributed to the holing of the McCarthy. Hallett could have overcome this presumption if it could have shown that the holing was not caused by the unmarked debris.

Additionally, the third prong required for the Pennsylvania Rule to apply is that the injury suffered must be of a nature that the statute or regulation was intended to prevent. In other words, "Under the Pennsylvania rule, the violator of a statutory rule intended to prevent allisions has the burden of proving not only that its transgressions were not a contributing cause of the allision, but that they could not have been a cause of the allision." <u>Fla. E. Coast Ry. Co. v. Revilo</u>

8

Corp., 637 F.2d 1060, 1065 (5th Cir. 1981) (citations omitted). Here, there is no question that Hallett was in violation the Rivers and Harbors Act and the Wreck Act and that each of these acts was intended to prevent allisions, which is the type of injury that occurred here. In any event, the overwhelming evidence at trial supports the jury's finding that the unmarked debris did, in fact, cause the holing and flooding of the McCarthy and that a sign or marker would have prevented that event. Additionally, wholly apart from application of the Pennsylvania Rule, the jury separately found that Hallett directly caused the holing and damage at issue by, for example, breaching its contract with ASC by failing to provide safe mooring; breaching an express warranty to ASC with regard to safe mooring; and breaching its implied warranty of workmanlike performance to ASC.

### III.   MOTION TO AMEND THE JUDGMENT

Hallett argues that, if the Court does not grant a new trial, then it should amend the judgment and reduce the award by $87,678.90. Hallett asserts that invoices issued by North American Marine, Inc., totaling $87,678.90, should not have been included in ASC's damages claim because Jared Aquilla of North American Marine was retained as a surveyor to represent the underwriters, not

9

ASC. As evidence of this, Hallett points to the transcript of the deposition of Eileen Fellin, of American Hull Insurance Syndicate. (Ex. 5, Fellin Dep. 108-09.) It argues that, when a surveyor acts solely on behalf of the underwriter's interest, the fee charged in connection with a claim is not recoverable.

At trial, ASC's Assistant Vice President of Fleet Engineering, Pierre Pelletreau, testified that he worked with surveyor Aquilla; that Aquilla's work as a marine surveyor was an asset and resource for Pelletreau in obtaining the correct and reasonable repairs; and that Aquilla's work was a necessary and reasonable cost for the repair of the McCarthy. (See Trial Tr. Vol. V at 166-67, 192.) ACS argues that, because North American Marine's services were essential to ASC's repair efforts and the mitigation of its damages, and would not have been incurred but for the holing and flooding of the McCarthy, ASC is entitled to recover the amounts paid.

> A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e), and [the appellate] court will not reverse absent a clear abuse of discretion. It should be noted that Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence. Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment.

United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir.2006) (internal citations and quotations omitted).

The Court concludes that there was no manifest error of law or fact. As Hallett points out, cost surveys done solely for the benefit of the insurance company are not recoverable. See, e.g., The Priscilla, 55 F.2d 32, 37 (1st Cir. 1932). However, surveyors' costs may be recoverable, even when the surveyors are engaged by the underwriter, when they report to both the underwriter and the owner; "[t]heir services were necessary in order to specify the nature and extent of repairs that were to be made;" and "[t]heir services and the value were adequately proved." Reliable Transfer Co. v. United States, 1973 A.M.C. 930, 933 (E.D.N.Y. 1973), aff'd 497 F.2d 1036 (2d Cir. 1974), rev'd on other grounds 421 U.S. 397 (1975), judgment reinstated as modified on other grounds, 522 F.2d 1381 (2d Cir. 1975). Here, Hallett points to deposition testimony outside the trial record to show that Aquilla was engaged by the underwriters, not ASC. Even so, trial testimony established that Aquilla worked with ASC's Pelletreau; assisted Pelletreau as to the reasonableness and fairness of the repairs; and was a valuable asset and resource to ASC in repairing and mitigating the damage to the McCarthy caused by Hallett's actions. The specific costs of Aquila's work were

demonstrated in the invoices in the trial record.  Aquila's work was reasonable and necessary to repair the McCarthy.  Thus, the costs of his services were recoverable by ASC, and Hallett's motion to amend the judgment is denied.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

> Defendant Hallett Dock Company's Motion for a New Trial or, in the Alternative, to Amend the Judgment [Docket No. 476] is **DENIED**.


Dated:  May 31, 2013            s/ Michael J. Davis
                                Michael J. Davis
                                Chief Judge
                                United States District Court