# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

AMERICAN STEAMSHIP CO.,
a New York corporation, and
ARMSTRONG STEAMSHIP CO.,
a Delaware corporation,

        Plaintiffs,

v.                          **MEMORANDUM OF LAW & ORDER**
                               Civil File No. 09-2628 (MJD/LIB)

HALLETT DOCK CO., a Minnesota
corporation,

        Defendant.

Brent L. Reichert and Gerardo Alcazar, Robins Kaplan Miller & Ciresi LLP, Counsel for Plaintiffs.

David R. Hornig and Guerric S. D. L. Russell, Nicoletti Hornig & Sweeney, and Scott A. Witty and John D. Kelly, Hanft Fride PA, Counsel for Defendant Hallett Dock Co.

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Prejudgment Interest Against Hallett Dock Company. [Docket No. 474]

This matter was tried before a jury and, on February 21, 2013, the jury returned its verdict. The jury found that Defendant Hallett Dock Company

("Hallett") breached its contract with Plaintiffs American Steamship Company and Armstrong Steamship Company (collectively, "ASC"), breached implied and express warranties, was liable for negligent misrepresentation, and was negligent, and that all of these breaches were a direct cause of the damage to the Walter J. McCarthy, Jr. ("McCarthy"). The jury awarded $4,682,322.55 in damages, and attributed 100% of the fault to Hallett. On February 25, 2013, the Court entered judgment on the jury's verdict.

ASC now requests prejudgment interest at a rate of 10% per year from January 14, 2008, the date of the holing, until February 25, 2013, the date of judgment, for a total of $2,398,888.54.

## II. DISCUSSION

The McCarthy was holed on hidden concrete and rebar debris in Hallett's slip on January 14, 2008. The gash in the McCarthy's hull caused significant damage that had to be immediately addressed to prevent further damage to the vessel. On April 4, 2008, ASC provided Hallett with a notice of the claim against Hallett. The repair of the McCarthy was completed in May 2008. The McCarthy passed inspection on May 5, 2008, and sailed on May 6, 2008. ASC filed this lawsuit against Hallett on September 25, 2009.

## A. Propriety of an Award of Prejudgment Interest

"Prejudgment interest is awarded in admiralty suits in the discretion of the district court to ensure compensation of the injured party in full and should be granted unless there are exceptional or peculiar circumstances." Ohio River Co. v. Peavey Co., 731 F.2d 547, 549 (8th Cir. 1984). For example, peculiar circumstances might exist where the plaintiff unduly delays prosecuting the lawsuit. City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 196 (1995). No peculiar or exceptional circumstances exist here. The Court concludes than an award of prejudgment interest is appropriate to fully compensate ASC for the losses that it suffered.

## B. Date that Prejudgment Interest Began to Accrue

The parties disagree on when the prejudgment interest began to accrue: Hallett asserts that interest should be calculated from the date ASC paid for repairs, which it claims was October 21, 2009, while ASC asserts that the prejudgment interest should be awarded from the accident.

The purpose of an award of prejudgment interest "is to ensure that an injured party is fully compensated for its loss." Cement Div., Nat'l Gypsum Co., 515 U.S. at 195 (footnote omitted). "By compensating for the loss of use of money due as damages from the time the claim accrues until judgment is entered, an

award of prejudgment interest helps achieve the goal of restoring a party to the condition it enjoyed before the injury occurred." Id. at 196 (citations omitted). The Eighth Circuit has held that, when damages consist of the cost of repairs, the prejudgment interest should be awarded from the date of payment for the repairs. See Fed. Barge Lines, Inc. v. Republic Marine, Inc., 616 F.2d 372, 373 (8th Cir. 1980). Thus, "[w]here . . . a vessel is damaged but not put out of service interest is generally allowed only from the date of the expenditure for repairs, and not from the date of the collision [because] [t]he award of interest is made as compensation for the deprivation of the use of money or property." Utility Serv. Corp. v. Hillman Transp. Co., 244 F.2d 121, 125 (3d Cir. 1957). On the other hand, when the loss of property or money occurs immediately at the time of the casualty, prejudgment interest should commence at the time of that loss. See, e.g., Am. River Transp. Co. v. Paragon Marine Servs., Inc., 213 F. Supp. 2d 1035, 1066 (E.D. Mo. 2002) ("Pre-judgment interest is awarded customarily from the date of the casualty in admiralty law.") (citation omitted), aff'd 329 F.3d 946 (8th Cir. 2003).

In this case, an award is appropriate from the date of the casualty. Upon the holing, the McCarthy was immediately prevented from carrying cargo until

May 2008. Plaintiffs suffered immediate loss of use damages. Repairs were immediately undertaken. Defendant argues that Plaintiffs were not finished paying for repairs until at least October 21, 2009, when they made a $57,562.92 payment for propeller blade repairs. (Trial Ex. 52, line 34.) However, examination of the record demonstrates that this late payment is an outlier that represents a miniscule percentage of the cost of repairs. The record indicates that, immediately after the accident, Plaintiffs were invoiced for repairs and Plaintiffs immediately began paying the costs of repairs. (See, e.g., id., line 67 (Jan. 22, 2008 invoice and Feb. 20, 2008 check); line 253 (Jan 25, 2008 invoice and Feb. 13, 2008 check).) A flood of checks for repairs were dated throughout the spring of 2008. (See generally id.) ASC provided Hallett with notice of its claim in April 2008. Upon the holing of the McCarthy, ASC immediately incurred expenses. (Trial Exs. 51-52.) There is no question that, Plaintiffs' claim against Hallett accrued long before October 21, 2009, by which time they had suffered lost profits and paid millions for repairs. See Cement Div., Nat'l Gypsum Co., 515 U.S. at 196 (holding prejudgment interest is to be awarded "from the time the claim accrues"). Thus, the Court awards prejudgment interest from the date of the loss, January 14, 2008, until the date of judgment, February 25, 2013.

5

## C. Applicable Interest Rate

District courts possess discretion in selecting a prejudgment interest rate. The Eighth Circuit has "approved different approaches to deriving a rate of interest which will make the plaintiff whole." Ohio River Co. v. Peavey Co., 731 F.2d 547, 549 (8th Cir. 1984) ((citations omitted). The Court should award interest "at a rate generally consistent with the interest rate prevailing at the time repairs were completed because it is during this period that [the defendant] had the use and benefit of the money." Cargill, Inc. v. Taylor Towing Service, Inc., 642 F.2d 239, 242 n.6 (8th Cir. 1981). "Ascertainment by the district court of the appropriate prejudgment interest rate . . . [i]s a factual question, not a legal one, however, and hence it [i]s not within the district court's discretion to rely on conclusions reached by other courts as authority for determining the rate of interest that would fully compensate [the plaintiff]." Ohio River Co., 731 F.2d at 550.

Hallett requests that the Court utilize the average yield of the U.S. Treasury Bill during the appropriate time period, one method that has been found appropriate in maritime cases. See, e.g., Pimentel v. Jacobsen Fishing Co., Inc., 102 F.3d 638, 640 (1st Cir. 1996). While use of the Treasury Bill rate has been

6

found to be within the district court's discretion in other cases, there is no evidence that use of this rate would be appropriate here.

ASC asserts that, in order to fully compensate it, the Court should award the rate set by Minnesota state statute. See, e.g., Randolph v. Laeisz, 896 F.2d 964, 969 (5th Cir. 1990) ("[O]ne measure of prejudgment interest that has been upheld as within a trial court's discretion is the prejudgment interest rate of the state in which the court sits.") (citations omitted). Minnesota Statute § 549.09, subdivision 1(c)(2) provides for a prejudgment interest rate of 10% per year for an award over $50,000.

ASC argues that the Treasury Bill rate does not adequately compensate ASC for the five years it was deprived of more than $4.5 million. It points out that, in the invoices for the McCarthy repairs (Trial Ex. 51), ASC was obligated to pay rates of between 12% and 24% per year for late payments. For example, Fraser Shipyards Inc. charged ASC 18% per year on late payments on repair bills. (Id.)

Here, the Court has discretion to choose the most appropriate rate given the facts of the case. Under certain circumstances, the Treasury Bill rate, the average Prime Rate, and the Minnesota statutory rate could each be appropriate.

In this case, the evidence submitted to the Court regarding the cost to ASC of forgoing the money owed it for five years is limited. The cost to ASC of paying late on the millions in dollars in repairs caused solely by Hallett's fault was more than 10% per year, so a prejudgment interest rate of 10% does not overcompensate ASC. Moreover, this rate is in line with the rate set by the state in which this Court sits. See, e.g., Hines v. Triad Marine Center, Inc., 487 Fed. App'x 58, 66 (4th Cir. 2012). The Court determines that the Minnesota statutory rate of 10% is appropriate in this case.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

> Plaintiffs' Motion for Prejudgment Interest Against Hallett Dock Company [Docket No. 474] is **GRANTED** and Plaintiffs are awarded $2,398,888.54 in prejudgment interest.

Dated:  June 26, 2013          s/ Michael J. Davis
                               Michael J. Davis
                               Chief Judge
                               United States District Court